UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAREN M. WIEME,

              Plaintiff,

    -vs-

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

              Defendant.

_____

**DECISION AND ORDER**
**No. 13-CV-6214(MAT)**

## INTRODUCTION

Plaintiff, Karen M. Wieme ("Plaintiff" or "Wieme"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for Disability Insurance Benefits ("DIB").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, I grant the Commissioner's motion, deny the Plaintiff's cross-motion, and dismiss the Complaint.

## PROCEDURAL HISTORY

On August 9, 2010, Plaintiff filed an application for DIB, alleging disability as of December 16, 2009, which was denied. Administrative Transcript [T.] 60-64, 118-124. A hearing was held on December 20, 2011, via videoconference, before administrative law judge ("ALJ") Edgardo Rodriguez-Quilichini, at which Plaintiff,

who was represented by counsel, testified.  T. 9-59.  Two medical experts and a vocational expert also testified.  T. 32-35, 37-43, 53-58.  On January 5, 2012, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant period.  T. 12-28.

On March 4, 2013, the Appeals Councils denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  T. 1-7.  This action followed.

## FACTUAL BACKGROUND

Plaintiff, who was age 34 at the time of the alleged onset date, has a bachelor's degree and specialized training as a captionist.  T. 43, 118, 142.  She previously worked as a captionist, a customer service associate, and a human resources associate.  T. 43-44, 146, 165-172.

Plaintiff claims that she is disabled due to fibromyalgia, chronic fatigue syndrome ("CFS"), irritable bowel syndrome ("IBS"), polycystic ovarian syndrome ("PCOS"), and depression and anxiety. T. 145.

### Medical Evidence Before the Period at Issue

Prior to December 16, 2009, Plaintiff was treated for depression and anxiety, malaise and fatigue, back pain, upper respiratory infections, allergic rhinitis, a sprain in her thoracic region, left wrist pain and hand parasthesias, PCOS, obesity, hyperlipidemia, GERD, and otitis media.  T. 206-219, 230, 280-310.

**Relevant Medical Evidence from December 16, 2009 to January 5, 2012**

On December 18, 2009, Plaintiff went to Unity Family Medicine ("Unity") complaining of upper respiratory problems, and was diagnosed with acute shortness of breath, worsening malaise and other fatigue, and acute abdominal pain.  T. 248-250.

In January 2009, Plaintiff returned to Unity and was seen by Stefanie King, M.D., who assessed malaise and fatigue.  T. 253. Dr. King reported that Plaintiff would likely need to be on short-term disability due to her chronic absences and took Plaintiff out of work for a week.  Plaintiff's medications at that time were listed as Vitamin D, Celexa, Xyrtec, Flonase, oral contraceptives and Metformin.  T. 253.  Later in January, Plaintiff returned to Unity complaining of continued low energy and fatigue.  T. 254-255. Letitia Devoesick, D.O. assessed poorly controlled malaise and fatigue, and reported that Plaintiff would continue to be out of work for an additional month.  T. 255.  Plaintiff again returned to Unity in January and February complaining of the same continued symptoms, and reporting recurrent depression and anxiety.  No significant changes in Plaintiff's health were reported, Dr. Devoesick continued Plaintiff out of work until the middle of March, and increased Plaintiff's dosage of Celexa.  T. 319-321, 257, 259, 355, 322-323, 324, 259.  In March 2010, Plaintiff saw Dr. Devoesick, complaining that she felt no improvement, that some of her symptoms had worsened, and that she experienced increased depression and anxiety.  T. 260-261.  Dr. Devoesick assessed poorly

controlled malaise and fatigue, noted that Plaintiff would continue to be out of work until June 1, and replaced Plaintiff's Celexa medication with Cymbalta.  T. 261.

Plaintiff returned to Dr. Devoesick in April, May, and mid-June, complaining of the same symptoms, and no significant changes were reported in Plaintiff's health.  At her April visit, Dr. Devoesick prescribed Diflunisal at bedtime for Plaintiff's aches and pains  T. 263, 265-267.  At her June visit, Plaintiff reported that she could not currently return to work because of her ongoing symptoms.  T. 268.  Dr. Devoesick assessed "fibromyalgia/chronic fatigue syndrome" and also discounted Plaintiff's Cymbalta medication and prescribed Savella.  T. 269.

On June 27, 2010 Plaintiff presented to Unity Hospital Emergency Department for nausea and vomiting, dizziness, and fatigue for the past three days.  T. 220-229.  Plaintiff reported that she had discontinued Savella and restarted Cymbalta. Treatment notes reflect an impression of "dizziness (unknown cause), [p]robable [m]edication [s]ide [e]ffect, [g]eneral [w]eakness."  T. 224.  Plaintiff was discharged in improved, stable condition and advised to follow-up with her primary care physician. T. 224.

Plaintiff followed-up with Dr. Devoesick on June 30, 2010, complaining of continued nausea, pain, fatigue, a fever the previous night, and ongoing depression and anxiety.  T. 271-273. Plaintiff reported that she was still out of work due to ongoing

muscle and joint pain and fatigue, and that she was limited in her activities which caused her symptoms to flare up.   T. 271. Dr. Devoesick assessed a possible "viral illness on top of med side effect . . . as well as recurrent symptoms of fibromyalgia and chronic fatigue."  T. 271.  She prescribed Vicodin for short-term pain relief of Plaintiff's musculoskeletal symptoms, and Zofran for nausea.  T. 272.  Dr. Devoesick noted that Plaintiff continued to be unable to work.  T. 272.

On November 1, 2010, Plaintiff returned to Dr. Devoesick, complaining of continued fatigue and pain, intermittent hand numbness and pain, and upper respiratory issues.   T. 357. Dr. Devoesick opined that Plaintiff was disabled from work due to significant fatigue and musculoskeletal pain related to fibromyalgia.  She recommended fluid, rest, and elevation for Plaintiff's upper respiratory symptoms.  T. 359.

**Consultative Examinations**

On November 11, 2010, Harbinder Toor, M.D. performed a consultative examination at the request of the Commissioner. T. 385-388.  Upon physical examination, Dr. Toor noted that Plaintiff  appeared in no acute distress, her gait and stance were normal, she could walk on heels and toes without difficulty, could squat fully, needed no help changing for the exam or getting on and off the exam table, was able to rise from a chair without difficulty, and did not use assistive devices.   T. 386. Plaintiff's musculoskeletal examination revealed seven mild trigger

points but was otherwise unremarkable, and Plaintiff had full range of motion of her spine and extremities and  non-tender joints. T. 387.

Dr. Toor diagnosed Plaintiff with a history of fibromyalgia with minimal trigger points, histories of CFS, IBS, PCOS, depression and anxiety, heartburn/acid reflux, panic attacks and high cholesterol.  T. 388.  Dr. Toor opined that Plaintiff's pain and chronic fatigue could interfere with her daily physical routine.  He noted "[n]o other medical limitations suggested by today's evaluation."  T. 388.

Also on November 11, 2010, Christine Ransom, Ph.D. performed a consultative evaluation at the request of the Commissioner. T. 389-392.  Upon examination, Dr. Ransom reported that Plaintiff's thought processes were coherent and goal-directed, her affect was moderately dysphoric and tense, her sensorium was clear, and she was oriented to person, place and time.  T. 390-391.  Dr. Ransom noted that Plaintiff's attention and concentration and her immediate and recent memory were moderately impaired, apparently by depression and anxiety.  T. 391.  Dr. Ransom assessed that Plaintiff's intellectual functioning appeared to be average, her general fund of information was appropriate to experience, and her insight and judgment were good.  T. 391.

Dr. Ransom diagnosed major depressive disorder, generalized anxiety disorder, and panic disorder with agoraphobia.  T. 392. Dr. Ransom opined that Plaintiff could follow and understand simple

directions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple, regular schedule, and learn simple new tasks.  T. 391-392.  Dr. Ransom opined that Plaintiff would have moderate difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress.  T. 392.

On December 2, 2010, M. Apacible, M.D. reviewed Plaintiff's file and completed a psychiatric review technique and residual functional capacity assessment, in which he determined that Plaintiff "retains the ability to perform work with simple tasks." T. 400-417.

**The Expert Hearing Testimony**

During the December 20, 2011 hearing, medical expert Dr. German E. Malaret reviewed the evidence of record and testified with regard to Plaintiff's physical impairments.  T. 37-38. Dr. Malaret testified that the record showed a "questionable" diagnosis of fibromyalgia, explaining that there was "was very little supportive evidence for this." T. 37-38.  He also testified that the record showed diagnoses of CFS and obesity.  T. 37-38. Dr. Malaret opined that Plaintiff was limited to lifting and carrying approximately 10 lbs frequently and 20 lbs occasionally and that her ability to walk would depend on her fatigue level.  He also opined that she was limited in her ability to repetitively move or use her legs or upper extremities, that she was possibly able to perform crouching, crawling, bending or stopping, she could

not climb ladders or scaffolds, her concentration and attention would be limited due to fatigue and that she did not have any limitations in sitting or standing.  T. 38-40.

Medical expert Dr. June Mary Jimenez, Psy.D. testified with regard to Plaintiff's mental impairments.  T. 40-43.  Dr. Jimenez determined that Plaintiff would have difficulty doing jobs which required complex and detailed tasks, but that she could do simple work tasks, maintain attention and concentration for at least a two hour window, and she should avoid doing jobs that required direct contact with the public.  T. 42.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405 (g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2007).  The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402

U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 105-06 (2d Cir. 2003); <u>see</u> <u>also</u> <u>Mongeur</u>, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

## II.  The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims. 20 C.F.R. § 404.1520. Pursuant to this inquiry:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the

> Commissioner considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the Commissioner considers whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1, Part 404, Subpart P. If the claimant does not have a listed impairment, the Commissioner inquires whether, despite the claimant's impairment, he has the residual functional capacity to perform his past work. If he is unable to perform his past work, the Commissioner determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982).

The ALJ in this case used this sequential procedure to determine Plaintiff's eligibility for disability benefits. The ALJ found that:  Plaintiff did not engage in substantial gainful activity since December 16, 2009;  that Plaintiff had the severe impairments of fatigue syndrome and depressive disorder and the non-severe impairments of PCOS and GI condition, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments; that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work; that Plaintiff was unable to perform her past relevant work; and that, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. T. 12-27. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant period. T. 28.

## III. Analysis of Plaintiff's Arguments

### A. The ALJ Properly Weighed the Opinions of Record and the RFC is Supported by Substantial Evidence

Plaintiff argues that the ALJ improperly disregarded the opinion and findings of her treating physician, Dr. Devoesick, and improperly substituted his own lay opinion for professional medical opinion.  Dkt. No. 14-1 at 20.

As Plaintiff points out, Dr. Devoesick's treatment notes consistently reflect a diagnosis of fibromyalgia.  T. 418-447.  The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record.  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527(c)(2) (noting that treating physicians offer a "unique perspective to the medical evidence" that cannot otherwise be obtained from the record).  In order to override the opinion of the treating physician, an ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.  Burgess, 537 F.3d at 129.

The Court finds that the ALJ did not err in rejecting Dr. Devoesick's diagnostic assessment of fibromyalgia.  According to the American College of Rheumatology, which the ALJ accurately referenced in his opinion, there are two criteria for the diagnosis

of fibromyalgia: widespread pain lasting at least three months and at least 11 positive tender points out of a total possible of 18. T. 15; see also http://www.nfra.net/Diagnost.htm (last visited 5/15/14). The clinical evidence in the record, as the ALJ noted, did not support such a diagnosis. Specifically, Dr. Devoesick's "diagnostic impression" of fibromyalgia was unsupported by specific clinical findings. T. 21. For example, on July 15, 2010 and August 9, 2010, Dr. Devoesick reported that Plaintiff had ongoing chronic fatigue and fibromyalgia, but did so without elaboration or further explanation and simply reported that Plaintiff had "multiple tender points." T. 21, 274-275, 277-278. Additionally, as noted by the ALJ, while Dr. Devoesick made a "diagnostic impression" of fibromyalgia, she never referred Plaintiff to a rheumatologist at any point. T. 21.

Further, a diagnosis of fibromyalgia was inconsistent with the physical examination findings from consultative examiner Dr. Toor, who assessed that Plaintiff had only seven mild trigger points (rather than 11), had full range of motion of her spine and extremities, and that her joints were non-tender. T. 15. Further still, as the ALJ pointed out, the record overall failed to show significant clinical findings related to Plaintiff's generalized musculoskeletal pain and fatigue. T. 22. The ALJ noted that with respect to Plaintiff's extremities and musculoskeletal system, exam findings were consistently either mild or normal. T. 22, 266, 272, 429.

Accordingly, because Dr. Devoesick's opinion was not supported by specific clinical findings and was also inconsistent with the other evidence in the record, the ALJ properly discounted Dr. Devoesick's "diagnostic impression" of fibromyalgia.

Plaintiff also argues that the ALJ erred in his RFC assessment by according the opinions of the non-examining and consultative examiners more weight than that of Dr. Devoesick.   In assessing Plaintiff's RFC, the ALJ afforded "great weight" to the opinions of medical experts Malaret and Jimenez and consultative examiners Toor and Ransom, "some" weight to State Agency medical consultant Apacible, and "little" weight to the disability opinion of treating physician Dr. Devoesick.   T. 24-25.   Dr. Devoesick opined, at various instances throughout the record, that Plaintiff was unable to work due to her ongoing pain symptoms and fatigue.   T. 24-25, 341, 359, 423, 426, 434, 437, 440.

As an initial matter, an opinion by a treating physician that a claimant is "disabled" or "unable to work" has no special significance because it is not a medical opinion. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).   As the ALJ correctly noted here (T. 25-6), these determinations are legal conclusions that are "reserved to the Commissioner." Id.   Thus, the ALJ did not err as a matter of law in discounting the disability opinion of treating Dr. Devoesick.

Moreover, to the extent Dr. Devoesick's disability opinion was unsupported by clinical evidence and was also inconsistent with

other substantial evidence in the record, the ALJ committed no error in affording her disability opinion "little weight."  See 20 C.F.R. § 404.1527(c)(2).  Specifically, Drs. Malaret, Jimenez, Toor, Ransom nor Apacible determined that Plaintiff's impairments -- physical and/or mental -- precluded her from performing all work.  An ALJ is not required to accept the opinion of a treating physician where the treating physician issued opinions that are not consistent with the opinions of other medical experts.  See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."); Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record."); Garrison v. Comm'r of Soc. Sec., No. 08-CV-1005, 2010 U.S. Dist. LEXIS 70411, 2010 WL 2776978, *4 (N.D.N.Y. June 7, 2010) ("[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability" (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2)) (other citation omitted).

Here, medical expert and internist Dr. Malaret reviewed the evidence in the record and determined that while Plaintiff's fatigue was present and imposed "some limitations," it was not disabling. T. 25. Dr. Malaret opined that Plaintiff could lift, carry, push and or pull 20 lbs occasionally and 10 lbs frequently, and that she would have difficulty walking depending on her fatigue. He also opined that Plaintiff would have postural limitations, particularly when stooping and bending, and could never lift ladders or scaffolds. The ALJ credited Dr. Malaret's opinion, except for his testimony that Plaintiff was limited in walking, because this particular limitation was not supported by the record evidence which overall showed no significant abnormal extremity or musculosketal findings. T. 25, 249, 252, 257, 259, 266, 272, 312, 423, 426, 429, 434, 437, 440. As the ALJ explained, Dr. Malaret's opinion was consistent with the opinion of consultative examiner Dr. Toor, who opined that while Plaintiff's chronic pain and fatigue could interfere with her daily physical routine, it did not result in any other medical limitation. T. 26, 388. Dr. Toor's opinion was based on his physical examination of Plaintiff, which showed that Plaintiff's gait and stance were normal, she had seven mild trigger points, she had full strength and range of motion in her extremities, no motor or sensory deficits, and no muscle atrophy. T. 22, 386-388.

With respect to Plaintiff's mental limitations, Dr. June Jimenez, clinical psychologist and medical expert, reviewed the

evidence in the record and assessed that Plaintiff had a depressed mood and that she was limited to simple, routine, repetitive tasks and must not interact with the public.   T. 25, 40-43. Dr. Jimenez's opinion was consistent with the opinion of consultative psychological examiner Dr. Ransom, who opined that Plaintiff can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks.   T. 25, 389-392. Dr. Ransom's opinion was based on her examination of Plaintiff, which showed that Plaintiff's attention and concentration were only moderately impaired, her intellectual functioning was average, and she was cooperative and socially appropriate.   T. 390-391. Additionally, the opinion of Dr. Ransom, as the ALJ noted, was adopted by consulting specialist Dr. Apacible, who opined that Plaintiff "retain[ed] the ability to perform work with simple tasks."  T. 26, 416.

Accordingly, the Court finds that the ALJ properly weighed the opinions in the record, including the treating physician's disability opinion, and his RFC assessment is supported by substantial evidence.

## B.   The ALJ Properly Considered Plaintiff's Impairments in Combination and Assessed the Record as a Whole

Plaintiff argues that the ALJ failed to consider all of her impairments in combination pursuant to 20 C.F.R. § 404.1523, and

also failed to consider her obesity.  Relatedly, Plaintiff argues that the ALJ failed to consider and analyze all of the evidence in the record, namely the evidence from treating psychologist Dr. Polechuk.  Dkt. No. 14-1 at 23-24.

"The combined effect of a claimant's impairments must be considered in determining disability" and "the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe."  Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995) (citations omitted); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . .").

Here, the record reflects that the ALJ engaged in a thorough discussion of Plaintiff's identified impairments and the combined effect that they have on her ability to work.  T. 18-26.  The RFC finding -- that Plaintiff could perform less than a full range of work -- takes into account the physical limitations imposed on Plaintiff by her musculoskeltal pain and fatigue, as well as the mental limitations imposed on her by her depression and anxiety.  T. 18-26.  Additionally, there is no merit to Plaintiff's contention that the ALJ erred in failing to consider her obesity.  As an initial matter, the Court notes that Plaintiff did not allege disability on account of her obesity.  Nonetheless, the ALJ elicited testimony from Plaintiff at the administrative hearing

with respect to her weight. T. 53.  Further, in arriving at Plaintiff's RFC, the ALJ specifically addressed Plaintiff's complaints of her "increased appetite" and her "weight gain." T. 19.

Likewise, the Court finds no merit to Plaintiff's argument that the ALJ erred in failing to consider and analyze all of the evidence in the record, namely the evidence from treating psychologist Dr. Poleschuk.  A review of the record reflects that the outpatient mental health treatment notes from Ellen Poleschuk, Ph.D., covering the period November 11, 2008 to October 25, 2011 (T. 448-488), were submitted to the Appeals Council <u>after</u> the ALJ issued its decision.  T. 2-7.  The Appeals Council reviewed this evidence and found that "this information does not provide a basis for changing the [ALJ's] decision."  T. 2.  The Appeals Council specifically explained that "[w]e considered whether the [ALJ]'s actions, findings, or conclusions is contrary to the weight of the evidence of record.  We found this information does not provide a basis for changing the [ALJ] decision."  <u>Id.</u>

Moreover, even if the ALJ had had this evidence before him at the time he issued his decision, there is no possibility that the outcome of Plaintiff's proceeding would have been different given that this evidence is not particularly favorable to her.  For example, the mental health treatment notes from Dr. Poleschuk show overall that Plaintiff's mood and function were good, her

intelligence was average, her judgment was intact and her insight was fair.  T. 448-452.  Dr. Poleschuk's notes also belie Plaintiff's contention that her physical and/or mental impairments prevent her from working to the extent Dr. Poleschuk noted on February 23, 2011 that Plaintiff reported that "her life is busy and full and is not interested in finding employment at this time." T. 457.

### C.   The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff maintains that the ALJ erred in discounting her complaints of disabling pain and related symptoms.  In accordance with the applicable regulations and agency ruling, the ALJ clearly considered Plaintiff's subjective complaints and explained why he found her statements to be not fully credible.  See T. 19-26; 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); 404.1529(c); 416.929(c) SSR 96-8p, 1996 SSR LEXIS 5. The ALJ thoroughly considered the objective medical evidence and the factors set out in 20 C.F.R. §§ 404.1529(c) and 416.929(c), including Plaintiff's treatment, medication, inconsistent statements, and her daily activities. T. 19-26.

Despite the ALJ's thorough discussion of Plaintiff's testimony and her testimony, Plaintiff argues that the ALJ's credibility assessment is flawed to the extent that the ALJ mischaracterized her statements in her Function Report and her testimony.  She maintains  that, contrary to the ALJ's findings, there was no

"material difference in her testimony and [her] written statements." Dkt. No. 14-1 at 24.   There is no merit to this argument.

A review of the record reflects that Plaintiff completed a Function Report in which she claimed that her impairments limited her ability to work.   T. 154-159.   However, as the ALJ pointed out, although Plaintiff claimed in said Function Report that she had difficulties in grooming, taking care of her daughter and pets, in doing most household chores, and preparing meals, she also acknowledged being capable of driving her car, traveling alone and doing shopping.   Additionally, she acknowledged being capable of paying and handling her own funds, and reported going, on a regular basis, to her doctor's office, stores, and friends and families' houses.   T. 19, 155-158.

In addition to the Function Report, Plaintiff also testified at her hearing with respect to her impairments and related limitations.   As the ALJ accurately noted, Plaintiff reported symptoms of fatigue with any form of exertion, experiencing dizziness, increased appetite, pain in her hips and extremities, weight gain, concentration difficulties, depression, anxiety, panic attacks, and altered sleeping patterns.   She also complained of IBS.   However, the ALJ noted that Plaintiff also testified that she is able to take her daughter to the bus stop, use the computer, and do scrapbooking.   With respect to her complaints of IBS, the ALJ

pointed out that the Plaintiff also testified at the hearing that she hardly goes to the restroom because she spends most of the day sleeping. Additionally, the ALJ pointed out that, contrary to what she indicated in the Function Report, Plaintiff testified at the hearing that her husband does the shopping and that she never goes with him. T. 19, 50-53. The ALJ also noted that, while only one observation "among many" he was relying on in reaching a conclusion regarding the credibility of Plaintiff's allegations, Plaintiff was able to participate in the hearing proceedings closely and fully without being distracted and was able to respond to questions in an appropriate manner. T. 19.

As such, it was reasonable for the ALJ to discredit the Plaintiff's subjective complaints of disabling pain and related symptoms that prevented her from performing any type of work. See Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010) (finding that when an ALJ assesses a Social Security claimant's credibility, "the ALJ was required to consider all of the evidence of record, including [the claimant's] testimony and other statements with respect to his daily activities") (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

Furthermore, the Court is unpersuaded by Plaintiff's contention that although she managed to perform certain daily activities, she did so "in spite of her fatigue and pain" and that these activities caused "pain and malaise afterwards." Dkt. No. 14-1 at 24. "[D]isability requires more than mere inability to

work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Prince v. Astrue, 12-727-cv, 490 Fed. Appx. 399, 2013 U.S. App. LEXIS 211, at *3 (2d Cir. Jan. 4, 2013) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983)).

Plaintiff also argues that the ALJ erred by "fail[ing] to give Ms. Wieme the credibility she was due for someone with a good work history." Dkt. No. 14-1 at 24-25. Indeed, "a good work history may be deemed probative of credibility[.]" Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). Work history, however, is "just one of many factors" that an ALJ considers in assessing credibility. Schaal, 134 F.3d at 502. Notwithstanding Plaintiff's "excellent work background" -- which the ALJ acknowledged (T. 23) -- the ALJ discounted Plaintiff's credibility in reasonable reliance on her own inconsistent statements, coupled with the absence of any medical evidence in the record showing an inability to perform all types of work.

Accordingly, the Court finds that the ALJ's credibility assessment is correct as a matter of law and is supported by substantial evidence in the record.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings is granted, the Plaintiff's cross-motion is denied, and the Complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     May 19, 2014
           Rochester, New York